## Cline Estate

*Millard A. Ullman,* for executrix.

*George S. Black,* for register of wills.

DEPUY, J., November 30, 1959.—In this estate the executrix filed her first and final account with the Register of Wills of Franklin County on August 4, 1959, showing a gross estate of $91,874.60, composed principally of a real estate mortgage and an assortment of common stocks, debts and deductions amounting to $11,214.32, Pennsylvania Inheritance Tax, $1,885.95, leaving a net estate for distribution of $77,350.40.

As part of the debts and deductions there was shown in the account an item of $2,523.50 for monument at

the grave purchased from Joseph L. Mathias. The register of wills, in the capacity of agent for the Commonwealth, on September 3, 1959, filed exception to the account alleging failure to pay the balance of inheritance tax owing. On September 1, 1959, the register had entered a notation upon the statement of debts and deductions disallowing all the deduction claimed for the monument except $523.50.

On behalf of the executrix a motion was filed asking that the court, without appointing an auditor, proceed to hear and determine the issue raised by the exception. The court fixed September 9, 1959, as time for hearing and argument.

At the hearing the register testified from the records of his office, establishing the size of the gross and net estates, the amount of the deduction claimed for the monument and referred to the appropriate statute, Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, sec. 2, as amended, 72 PS §2302, which provides as follows:

". . . In ascertaining the clear value of such estates, the only deductions to be allowed from the gross values of such estates by the register of wills shall be . . . reasonable expenses for the erection of monuments or grave stones, grave and lot markers . . ."

The register testified that he had allowed the sum of $523.50 as a reasonable cost of monument and had disallowed the deduction to the extent of $2,000, so that additional transfer inheritance tax is due in the sum of $43.63, which includes interest. On September 3, 1959, this amount was paid under protest to the register of wills. The register and his counsel took the view that in the nature of these proceedings the burden is not on the register to prove unreasonableness of the amount of the cost of the monument, but that, on the contrary, once challenged, the burden of proving the

reasonableness of it is on the accountant. We adopted this view.

The executrix then moved the court to dismiss the exception, arguing that as a matter of law the court could not possibly find that the figure listed for the monument, $2,523.50, was, in light of the size of the estate, unreasonably large.

The executrix, who is the widow of decedent, rests her position that the cost of the monument is reasonable upon the reported county court cases where the subject has been dealt with. She argues that in no instance has a court in Pennsylvania disallowed the amount of a deduction for a monument where the cost shown was less than three percent of the gross estate. The figure of $2,523.50 here amounts to a fraction of two and one-half percent.

It has long been established that the cost of a tombstone for a decedent is a proper expense of administration (Kreeger's Estate, 277 Pa. 326), and this is now specifically provided for as an inheritance tax deduction by the statute already quoted.

When the Commonwealth raises an issue of the reasonableness of a deduction affecting the amount of inheritance tax due, the executrix contends that the burden is placed on the Commonwealth to show a prima facie case.

It is true that any claimant against a decedent's estate, who excepts to nonpayment of his claim, has the burden of establishing his claim: Shafar's Estate, 66 Dauph. 74. However, the present problem is not one of the Inheritance Tax Bureau having to establish the validity of its claim for inheritance tax which is established by statute. The problem here is for the executrix, having purchased a monument at a cost figure included here as a deduction, and the conformity of the price to the statutory requirement of reason-

ableness being challenged by the State, to produce evidence tending to establish reasonableness.

Our conclusion is that in the first instance the register, having excepted to the monument bill as excessive in amount, must show the size of the net estate, and that he has disallowed a portion of the cost as excessive and unreasonable. Then the duty falls upon the executrix to show by affirmative evidence, or else as a matter of law, that the deduction made was within the orbit of reasonableness.

On the issue of reasonableness, the executrix here relies upon a series of county court cases as follows: Filoon Estate, 71 D. & C. 506, where there was an estate of $80,000 and a monument cost of $3,000 was allowed, plus $2,000 as the principal sum for a trust whereof the income was to be used for care of the family burial plot; Hetrick Estate, 78 D. & C. 52, where there was a $280,000 estate and a monument cost of $10,000 was allowed; Ashbridge's Estate, 47 D. & C. 343, where there was a $330,000 estate and a monument cost of $15,000 was allowed; Dreisbach Estate, 87 D. & C. 392, where there was an estate of $359,000 and a monument cost of $15,000 was allowed.

There appears to be little in the statute or cases by way of guideposts for the court in considering the question of reasonableness of the deduction claimed by a personal representative for monument purposes. No criteria have been found. In consequence the question is thrust directly upon each court which must then try to decide what factors should be given weight under the circumstances. The problem is more within the realm of sentiment than of law and therefore is most elusive for either a departmental agent or the court to resolve. The only sensible approach seems to us to be the setting up of a ratio based upon the net worth of the estate. On a question as intangible and impalpable as fixing the proper amount for a funeral

bill or for a cemetery monument, an ample leeway must be allowed for the vagaries of human nature.

For those persons who possess a wholly practical turn of mind, weighted heavily on the side of advancing the interests of the living as against those of the dead, a thrifty conclusion as regards the gravestone would come naturally. For the other type of being who lives on an emotional plane and who may have possessed a touching sentiment and undying affection for the late decedent, one who does not possess an intense interest in storing up this world's goods, a much greater expenditure for a monument or a funeral might find ready acceptance. The law casts the burden directly upon the court to resolve this enigma. We sense the desirability of finding a formula which would lend itself reasonably to use in the generality of cases.

It has been reported that the Inheritance Tax Bureau has instructed the respective registers in the counties that from $300 to $500 should be allowed for a monument, regardless of the size of the estate. A review of approved monument costs taken from various sources, including the reported county decisions, shows a ratio between the cost of the monument and the amount of the gross estate, extending from five percent down to one percent and lower. The county court cases cited are, of course, of persuasive force but are not binding upon us. Apparently the question has not been decided in the appellate courts. The register has examined a run of 30 large estates in this court, in none of which the monument expense shown by the accountant was more than six-tenths of one percent of the net estate.

Considering that a monument expense amounting to one percent of the net estate might be entirely ample, we are willing, in the interest of humanity's vagaries, to increase this to two percent as a maximum. In this context we speak of net estate before inheritance tax

and monument cost are deducted. If the fiduciary desires to have something more elaborate, and is not fearful of objections by heirs or distributees, he may go anywhere above this figure, but not without satisfying the interest of the State, the body corporate of the people, through the medium of the Inheritance Tax Bureau as to the portion of the cost which is beyond this ceiling.

It may be contended by the register as a practical matter that if a ratio figure on reasonable cost of monuments is to be established in the Commonwealth, fiduciaries and monument firms will tend to adopt a uniform deduction at the maximum figure instead of limiting themselves to the actual cost of a modest monument. There seems no good reason why such a practice should develop. If the tax agents of the Commonwealth are sufficiently active in auditing monument invoices so as to establish the actual cost, we think the likelihood of maximum deductions and of fraud upon the Commonwealth by including inflated deduction figures for monuments can be minimized. Certainly the interest in making the largest possible distribution to beneficiaries ought to weigh more heavily in the calculations of fiduciaries than the interest of monument makers or the desire to avoid inheritance tax.

In light of the foregoing, we overrule the accountant's motion to dismiss the exception. If the accountant is willing to stipulate that the court may dispose of the case without taking the accountant's evidence as to reasonableness of monument cost, we will enter an order disallowing for inheritance tax purposes so much of the monument deduction here of $2,523.50 as is beyond two percent of the net estate.

As a corollary it would seem that, for inheritance tax purposes, in net estates below $30,000, a monument expense not exceeding $600 should be acceptable.

On the question of procedure in an appeal of this kind from disallowance of a deduction for Pennsylvania Inheritance Tax purposes, the accountant has suggested that the matter can be approached in two ways, either under section 2 of the Transfer Inheritance Tax Act, 72 PS §2302, or section 13 of that act, 72 PS §2327. Devlin's Estate, 58 D. & C. 405, and Mills Estate, 367 Pa. 504, have been cited. In the present problem the amount of money involved is small and so we have yielded to accountant's plea and have consented to hear and dispose of the exception directly in the orphans' court. This obviates the delay and expense that appointment of an auditor would occasion.

Now, November 30, 1959, the exception of the Commonwealth is sustained and so much of the cost of the monument set forth in the account of the executrix as exceeds two percent of the net estate is disallowed for inheritance tax purposes. The account filed is so modified and as modified is confirmed. Exception granted to accountant and to the Commonwealth.